UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBIN R. STOOT, LISA A. PHILLIPS, and
VANESSA A. HILL, on behalf of themselves
and all others similarly situated,

                       Plaintiffs,

v.

CAPITAL MANAGEMENT SERVICES, L.P.
and CENTER ONE, LLC,

                       Defendants.

1:24-CV-592 LJV (MJR)

DECISION AND
ORDER

---

This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable Lawrence J. Vilardo, for all pretrial matters and to hear and report on dispositive motions. (Dkt. No. 29) Before the Court is plaintiffs' motion for conditional certification of a Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, collective action. (Dkt. No. 41) For the following reasons, plaintiffs' motion for conditional certification and court-supervised notice is granted.[1]

## BACKGROUND

*The Complaint*

Plaintiffs Robin Stoot, Lisa Phillips, and Vanessa Hill are or were jointly employed by defendants Capital Management Services, L.P. and Center One, LLC (collectively referred to as "defendants") as customer service representatives, or in other similar

---

[1] A motion for conditional certification of an FLSA collective action is a non-dispositive motion within the authority of a magistrate judge. *See Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383-84 (E.D.N.Y. 2010)

positions.[2] (Dkt. No. 34, ¶¶ 1-3, ¶ 15) Defendants operate call centers. (*Id.* at ¶ 18) Stoot and Phillips hold fully remote positions. (*Id.* at ¶¶ 1-3, ¶ 15) Plaintiffs and other similarly situated employees were required to start up, and then log in to, three separate software programs before they were able to clock-in for the start of their shifts. (*Id.* at ¶¶ 22-23) These clock-in duties, which are unpaid, can take anywhere from twenty to thirty minutes to complete. (*Id.* at ¶¶ 21-25) In addition, defendants prohibited employees from clocking in more than five minutes before the start of their shifts. (*Id.* at ¶ 24) Defendants also require employees to accept their first customer call as soon as their shift begins, or they are subject to discipline. (*Id.* at ¶ 25, ¶ 27) Clock-in duties must be completed before employees can view client information, receive guidance on technical issues, and chat with supervisors throughout the day. (*Id.* at ¶ 26)

Defendants used a program called "Genesis" that allows employees to switch their status on their computer screens to alert supervisors of their activity. (*Id.* at ¶ 31) For example, employees could switch their status to "break", "lunch", or "in a meeting." (*Id.*) Defendants required employees to switch their status to "break" if they walked away from their computer for any reason, including to use the bathroom. (*Id.*) Defendants keep track of how long employees have their status switched to "break", and employees are not paid for any break time in excess of ten minutes as a cumulative total during each shift. (*Id.* at ¶¶ 30-32)

If employees experience technical or computer issues that prevent them from performing their job duties, they are required to reach out to their supervisor before contacting the Information Technology Department ("IT"). (*Id.* at ¶ 35) Supervisors then

---

[2] Defendants "operate as an integrated enterprise, with common management and shared finances between them." (Dkt. No. 34, ¶¶ 15-16)

2

contact IT for support if needed. (*Id.*) It can sometimes take anywhere from thirty minutes to three hours for IT to resolve an employee's technical or computer issue. (*Id.* at ¶¶ 36-38) Employees were not paid for time they spent waiting for their supervisor and/or IT to resolve these problems. (*Id.*)

Defendants automatically deducted a thirty-minute unpaid meal break from employees' daily pay, even though they were aware that employees regularly worked during this thirty-minute period. (*Id.* at ¶¶ 42-47) Employees are required to clock in and out during the lunch period, and as a result, must again complete clock-in duties before resuming work after a lunch period. (*Id.* at ¶ 28) Thus, employees are often required to end their meal breaks early to complete their clock-in duties before resuming work. (*Id.*)

As a result of these policies, employees were not compensated for all hours worked and were not compensated at the required rate for all time worked in excess of forty hours per week, in violation of the FLSA. (*Id.* at ¶ 29, ¶¶ 40-41, ¶ 47, ¶¶ 93-101) Plaintiffs allege these FLSA violations as a putative collective action.[3] (*Id.* at ¶¶ 48-60)

*Plaintiffs' Declarations*

In support of the motion for conditional certification, plaintiffs Robin Stoot, Lisa Phillips, and Vanessa Hill (the "named plaintiffs") have each submitted declarations. Named plaintiffs indicate that defendants operate a collection agency and customer service call center. (Dkt. No. 28-5, ¶ 2; Dkt. No. 28-7, ¶ 2; Dkt. No. 41-2, ¶ 2) Stoot was employed by defendants between August 2021 and December 2023 in a fully remote position as a customer service representative and/or mortgage counselor. (Dkt. No. 41-2, ¶¶ 2-3) Phillips was employed by defendants between August 2023 and January 2024

---

[3] Plaintiffs also allege putative class actions for various wage and hour violations pursuant to New York and Ohio state law. (Dkt. No. 34, ¶¶ 61-92, ¶¶ 103-118, ¶¶125-141)

3

in a fully remote position as a customer service representative and/or mortgage counselor. (Dkt. No. 28-5, ¶¶ 2-3) Hill was employed by defendants between December 2020 and April 2021 as a customer service representative. (Dkt. No. 28-7, ¶¶ 2-3) Stoot, Hill, and Phillips' job duties included speaking on the phone with customers. (Dkt. No. 28-5, ¶ 3; Dkt. No. 28-7, ¶ 3; Dkt. No. 41-2, ¶ 3;)

Named plaintiffs declare that defendants prohibited employees from clocking in more than five minutes before the start of a scheduled shift. (Dkt. No. 28-5, ¶ 8; Dkt. No. 28-7, ¶ 8; Dkt. No. 41-2, ¶ 8) Named plaintiffs were also required to begin taking customer calls at the start of their shift. (Dkt. No. 28-5, ¶ 5; Dkt. No. 28-7, ¶ 5; Dkt. No. 41-2, ¶ 5) Before they could clock-in or begin taking customer calls, they had to log in to three different software programs. (*Id.*) Thus, Stoot would typically begin working between twenty and thirty minutes before the start of her shift; Phillips would typically begin working between thirty and sixty minutes before the start of her shift; and Hill would typically begin working approximately five minutes before the start of her shift. (Dkt. No. 28-5 ¶¶ 6-7; Dkt. No. 28-7, ¶¶ 6-7; Dkt. No. 41-2, ¶¶ 6-7) They were not paid for this time. (*Id.*)

Named plaintiffs further state that they were not paid for any break time in excess of ten minutes as a cumulative total during each shift. (Dkt. No. 28-5, ¶ 9; Dkt. No. 28-7, ¶ 9; Dkt. No. 41-2 ¶ 9) Stoot and Phillips indicate that they were required to clock in and out for a thirty-minute lunch period each day. (Dkt. No. 28-5, ¶ 11; Dkt. No. 41-2, ¶ 1) However, they were also required to sign back into each software program before they could clock back in after lunch, which meant they were only able to take approximately fifteen minutes as a break for lunch each day. (Dkt. No. 28-5, ¶ 12; Dkt. No. 41-2, ¶ 12) Hill states that she had thirty minutes of time automatically deducted from her pay each

4

day for a lunch break. (Dkt. No. 28-7, ¶ 11) Even though she often informed her supervisor that she did not take or was unable to take a lunch break, the time was still deducted. (Id. at ¶ 12) Named plaintiffs declare that they were not paid for time spent waiting for IT to resolve technical issues. (Dkt. No. 28-5, ¶ 10; Dkt. No. 28-7, ¶ 10; Dkt. No. 41-2, ¶ 10) Named plaintiffs spoke with other customer services representations employed by defendants who had similar experiences. (Dkt. No. 28-5, ¶ 13; Dkt. No. 28-7, ¶ 13; Dkt. No. 41-2 ¶ 13)

Plaintiffs also submit declarations from five other current or former employees of defendants ("opt-in plaintiffs"). Opt-in plaintiff Toni Brown indicates that she was employed by defendants between July 2021 and July 2024, in a fully remote position, as a supervisor and customer service representative. (Dkt. No. 28-8, ¶¶ 2-3) Brown would begin working approximately thirty minutes before the start of her shift and before clocking in, in order to be prepared to accept customer calls. (Id. at ¶¶ 5-6) Brown states that she was not paid for this time. (Id. at ¶ 7) In addition, Brown was not paid for any break time in excess of ten minutes as a cumulative total during her shift nor was she paid for any time she spent waiting for IT to resolve technical issues. (Id. at ¶¶ 9-10) Opt-in plaintiff Megan Kolb was employed by defendants beginning in October 2017 as a customer service representative. (Dkt. No. 28-6, ¶ 2) She began working in an office and later worked in a hybrid position. (Id.) In order to be prepared to take customer calls, Kolb typically started working approximately fifteen minutes before she was able to clock-in. (Id. at ¶¶ 5-6) She was not paid for this time. (Id. at ¶ 7) Kolb declares that she was unable to take more than one fifteen-minute break per day. (Id. at ¶ 9) Brown and Kolb spoke

with other customer services representatives, and they had similar experiences. (Dkt. No. 28-6, ¶ 10; Dkt. No. 28-8, ¶ 11)

Opt-in plaintiff Kelly Grantt was employed by defendants between August 2021 and September 2021, at an office in Amherst, New York, as a customer service representative. (Dkt. No. 28-4, ¶¶ 2-3) In order to be prepared to accept customer calls, Grantt typically began working five minutes before she was able to clock-in. (*Id.* at ¶¶ 5-6) Grantt states that she was not paid for this time. (*Id.* at ¶ 7) In addition, Grantt was not paid for any break time in excess of ten minutes as a cumulative total during each shift, nor was she paid for time she spent waiting for IT to resolve technical issues. (*Id.* at ¶¶ 8-9) Defendants automatically deducted thirty minutes from Grantt's pay each shift as a meal break. (*Id.* at ¶ 10) Grantt states that even though she sometimes informed defendants by email that she had not taken a meal break, she was not always paid for that time. (*Id.* at ¶ 11) Grantt worked alongside with, and spoke with, other customer service representatives who had similar experiences. (*Id.* at ¶ 12)

Opt-in plaintiff Kaylee Vander Ploeg was employed by defendants between August 2023 and March 2024, in a fully remote position, as a customer service representative and/or collections representative. (Dkt. No. 28-3, ¶¶ 2-3) In order to be prepared to take customer calls at the start of her shift, Ploeg would begin working approximately thirteen minutes before the start of her shift. (*Id.* at ¶¶ 5-6) Ploeg declares that she was not paid for this time. (*Id.* at ¶ 7) Ploeg further indicates that she was not paid for any break time in excess of ten minutes as a cumulative total during each shift, nor was she paid for time spent waiting for IT to resolve technical issues. (*Id.* at ¶¶ 9-10) Ploeg was often unable to take a lunch break. (*Id.* at ¶ 12) Ploeg states that even when she informed her supervisor

that she had worked through lunch, defendants still automatically deducted thirty minutes from her pay. (*Id.*) Ploeg spoke with other customer service representatives who had similar experiences. (*Id.* at ¶ 13)

Opt-in plaintiff Arianna McDowell was employed by defendants from 2022 to 2023 as a customer service representative and debt collector. (Dkt. No. 28-2, ¶ 3) She was first employed in an office and then in a remote position. (*Id.*) In order to be prepared to answer customer calls at the start of her shift, McDowell would begin working approximately fifteen to twenty minutes before the start of her shift and before she was able to clock-in. (*Id.* at ¶¶ 5-6) McDowell indicates that she was not paid for this time. (*Id.* at ¶ 7) Further, McDowell was not paid for time she spent waiting for IT to resolve any technical issues. (*Id.* at ¶ 9) McDowell spoke with other customer service representatives who had the same experiences. (*Id.* at ¶ 10)

*Motion for Conditional Certification*

On January 13, 2025, plaintiffs filed the instant motion for conditional certification of this case as a collective action under the FLSA. (Dkt. No. 41) Plaintiffs request that the Court direct issuance of notice, by United States mail, email, and text message, to the following potential collective:

> All current and former remote/hybrid non-exempt employees jointly employed by Capital Management Services, L.P. and Center One, LLC, between October 31, 2021 and the present.[4]

---

[4] The potential collective set forth in plaintiffs' motion for conditional certification also included in-person employees. (Dkt. No. 41, Exh. 1) However, during oral argument, counsel for plaintiffs indicated that plaintiffs agree that the potential collective should be limited to employees who worked for defendants in remote or hybrid positions only. Also, defendants note, in their opposition to the certification motion, that plaintiffs have the incorrect date for the scope of the proposed collective. (Dkt. No. 42, pg. 18, n. 7) Defendants indicate that because the instant motion was filed on January 13, 2025, if a collective action were to be certified, the collective would extend back to January 13, 2022. (*Id.*) As explained later, the parties should address the scope of the collective, as well as other items, when they meet and confer regarding the notice.

(Dkt. No. 41, Exh. 1) Plaintiffs request that defendants be directed to provide an electronic roster of all individuals that fit the definition of the collective that includes their full names, dates of employment, last known home addresses, personal email addresses, and phone numbers, and provide a declaration affirming that the produced roster fully complies with the Court's order.[5] (Dkt. No. 41)

## DISCUSSION

*Standard for Granting Conditional Certification*

"Unlike a representative action under Rule 23 of the Federal Rules of Civil Procedure, where all persons in the defined class are bound by the case outcome unless they affirmatively 'opt out,' an employee does not become a party to an FLSA collective action unless he or she affirmatively 'opts in' by filing written consent with the court." *Gordon v. Kaleida Health*, 08-CV-378, 2009 U.S. Dist. LEXIS 95729, at *11 (W.D.N.Y. Oct. 14, 2009) (internal citations omitted). "Although they are not required to do so by [the] FLSA, district courts have discretion, in appropriate cases, to implement [§ 216(b) of the FLSA] . . . by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). This process is often referred to as certification. *Acevedo v. WorkFit Med. LLC*, 14-CV-06221, 2014 U.S. Dist. LEXIS 131269, at *5 (W.D.N.Y. Sept. 16, 2014).

Courts follow a two-step process for determining whether a lawsuit should proceed as an FLSA collective action. *Myers*, 624 F.3d at 555. The first step, known as conditional certification, involves the court "making an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to

---

[5] Plaintiffs also request that the Court direct that duplicate copies of the notice may be sent if new, updated, or corrected contact information is found for any potential opt-in plaintiff. (Dkt. No. 41)

whether an FLSA violation has occurred." *Id*. To establish that a plaintiff is similarly situated to the members of the putative collective class, plaintiff must make a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Id*. "[T]he focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Shibetti v. Z Rest., Diner & Lounge., Inc.*, 478 F. Supp. 3d 403, 414 (E.D.N.Y. 2020) (alteration and citation omitted).

Plaintiffs' burden on a conditional certification motion is "minimal, especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one." *Gjurovich v. Ennamuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003). "[T]he court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations[, and a]ccordingly, an FLSA collective action may be conditionally certified upon even a single plaintiff's affidavit." *Robbins v. Blazin Wings, Inc.*, 15-CV-6340, 2016 U.S. Dist. LEXIS 35446, at *19 (W.D.N.Y. Mar. 18, 2016). Given this "fairly lenient" standard, conditional certification is "typically grant[ed]." *Chhab v. Darden Rests., Inc.*, 11 Civ. 8345, 2013 U.S. Dist. LEXIS 135926 (S.D.N.Y. 2013) (quotation omitted).

The second step of collective certification occurs after discovery is complete, when the court examines the evidentiary record and makes a factual finding as to whether the conditionally certified plaintiffs are, in fact, similarly situated to the lead plaintiffs. *Romero v. Flaum Appetizing Corp.*, 07 Civ. 7222, 2009 U.S. Dist. LEXIS 80498, at *7-8 (S.D.N.Y. Aug. 17, 2009) If the court determines the opt-in plaintiffs are not similarly situated, "the

9

court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims." *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336, n.1 (W.D.N.Y. 2008). Alternatively, if the class description is shown to require modification, that can be accomplished at the second step of the inquiry. *Id.* at 338 (citations omitted).

### *Plaintiffs Are Entitled to Conditional Certification*

The instant motion concerns only the first step of the certification process, and plaintiffs here have met the low threshold required for conditional certification.

The FLSA requires employers to pay employees for all time worked. *See* 29 U.S.C. § 207; 29 C.F.R. § 778.223(a) (stating that "hours worked" under § 207 include "(1) [a]ll time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace; and (2) all time during which an employee is suffered or permitted to work whether or not he is required to do so"). In addition, the FLSA requires employees to be paid an overtime rate of "not less than one and one-half times the regular rate at which [they are] employed" for any time worked in excess of forty hours per week. *See* 29 U.S.C. § 207(a).

Here, plaintiffs have sufficiently alleged common policies or practices by defendants that resulted in a failure to pay non-exempt hybrid and/or remote employees for all hours worked, as well for any overtime earned, in violation of the FLSA. These alleged policies and practices included (1) defendants' requirement that employees spend unpaid time logging in to various software programs before they were able to clock-in and begin their shift; (2) defendants' refusal to pay for any break time over and above a cumulative total of ten minutes per shift; (3) defendants' refusal to pay employees for time

spent waiting for IT issues to be resolved; and (4) defendants' failure to pay employees for time spent working during their thirty-minute lunch break. Moreover, each named plaintiff has submitted a declaration indicating that they were employed by defendants as customer services representatives and that they personally experienced these specific FLSA wage and hour violations.

Plaintiffs have further established a sufficient "factual nexus between [their] situation and the situation of other current and former employees" who were also potentially subject to defendants' alleged FLSA wage and hour violations. *Gjurovich*, 289 F. Supp. 2d at 104 (internal citations omitted). In addition to declarations by the three named plaintiffs, plaintiffs have submitted declarations by five opt-in plaintiffs who also worked as customer service representatives for defendants and who, like the named plaintiffs, claim that they were not paid for clock-in duties, time spent waiting for IT issues to be resolved, break time in excess of ten cumulative minutes per shift, and/or time worked during meal breaks. In addition, the three named plaintiffs and the five opt-in plaintiffs all declare that they spoke with other customer service representatives employed by defendants who shared similar experiences.[6]

In opposition, defendants submit affidavits from their Vice President of Information Security as well as their Vice President of Operations. (Dkt. Nos. 30-2; 30-3) These

---

[6] Named plaintiffs Stoot and Phillips, as well as opt-in plaintiffs Brown, Kolb, Ploeg, and McDowell all state that they were employed in either remote or hybrid positions. Named plaintiff Hill does not specify as to whether she worked remotely, in a hybrid position, or in person, and opt-in plaintiff Grantt indicates that she worked at an office in Amherst, New York. As explained above, the potential collective is limited to remote and hybrid employees. But even if the Court were to discount the declarations of Hill and Grantt, who do not appear to be remote or hybrid workers, the remaining six affidavits by remote and/or hybrid workers are sufficient to show that plaintiffs are similarly situated to members of the potential collective. *See Wraga v. Marble Lite, Inc.*, 05 Civ. 5038, 2006 U.S. Dist. LEXIS 60457, at *4-5 (E.D.N.Y. Aug. 22, 2006) (granting plaintiff's motion based on complaint and single affidavit alleging failure to pay overtime where plaintiff stated he was aware, based on conversations, of others in a similar situation).

affidavits state, *inter alia*, that (1) it takes remote employees, at most, three to four minutes to log in to defendants' system and clock-in for the day; (2) employees are paid for time spent waiting for technical or IT issues to be resolved; (3) employees are paid for one fifteen-minute break per six-hour shift; and (4) defendants' timeclock software does not automatically deduct thirty minutes per shift for an employee's lunch break. (*Id.*) But as noted above, the merits of plaintiffs' claims are not relevant on a motion for conditional certification. *See e.g., Ayers v. SGS Control Servs.,* 03 Civ. 9078, 2004 U.S. Dist. LEXIS 25646 (S.D.N.Y. Dec. 21, 2004) ("Defendants' focus on the merits is misplaced at this [conditional certification] stage."); *Sexton v. Franklin First Financial, Ltd.*, 08-CV-04950, 2009 U.S. Dist. LEXIS 50526, at *19-20 (E.D.N.Y. June 16, 2009) (defendants' merit-based argument is an attack on credibility of plaintiff and opt-in plaintiffs "that is not properly decided by the Court on this motion"). Here, plaintiffs have presented evidence that they and other potential collective members were not paid for all time spent working and/or for overtime earned. Defendants' contradictory evidence will certainly be relevant, down the road, to assess the merits of plaintiffs' underlying allegations. But it is not sufficient to defeat a conditional certification motion.

The Court also rejects defendants' contention that the declarations submitted by plaintiffs are too conclusory to justify conditional certification. Plaintiffs have offered declarations from multiple customer service representatives containing specific and corroborating information regarding defendants' alleged failure to pay employees for time spent working before they were able to clock-in as well as for time spent waiting for IT issues to be resolved. These affidavits also consistently recount defendants' alleged

failure to regularly pay employees for brief rest periods as well as for time spent working during meal periods.

The level of detail sought by defendants, including examples of what specific IT issues plaintiffs experienced, the names of the software programs plaintiffs were required to log in to before clocking-in, and how often plaintiffs encountered these difficulties, is simply not required at this stage of the certification process. *See Lubas v. JLS Grp.*, 18-CV-6611, 2020 U.S. Dist. LEXIS 130233 (E.D.N.Y. 2020) ("Where there are declarations from multiple plaintiffs, with each plaintiff corroborating or supporting each other's statements, even if somewhat thin on details, such proof is sufficient to meet the low factual threshold for FLSA collective certification."); *Garcia v. Spectrum of Creations, Inc.*, 102 F. Supp. 3d 541, 548-49 (S.D.N.Y. 2015) (certifying limited collective action where affidavits of two employees "corroborate[d] each others' personal treatment and observations of the treatment of other employees" despite noting that "[w]hile it would be helpful to have the time and dates of conversations, it is not surprising that plaintiffs would be unable to recall such specifics"). Defendants will certainly be entitled to more detailed information about plaintiffs' claims as the case moves forward. But we are not there yet. *See Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95 (E.D.N.Y. 2014) (noting that the first step of conditional certification "generally takes place before any significant discovery" and "the burden upon plaintiffs is extraordinarily low").

Defendants further argue that plaintiffs are not similarly situated due to differences or purported discrepancies in their declarations. Defendants point to variations in the

amounts of time the named and opt-in plaintiffs spent on clock-in duties.[7] Defendants further note that not all declarants specifically state that thirty minutes was automatically deducted from their pay each shift, and that declarants vary in their descriptions of the manner and amount of unpaid rest time. But the proper inquiry at the notice stage is simply "whether plaintiffs are similarly situated with respect to their allegations that the law has been violated." *Hallissey v. Am. Online, Inc.*, 99 Civ. 3785, 2008 U.S. Dist. LEXIS 18387, at *6 (S.D.N.Y. Feb. 19, 2008). And it is well-settled that such a determination does not require an individualized inquiry. *Sexton,* 2009 U.S. Dist. LEXIS 50526 (finding the existence of individual claims and defenses does not preclude conditional certification of FLSA collective action) (collecting cases).

Equally unavailing is defendants' argument that plaintiffs and potential collective members are not similarly situated if they worked on different "products" or did not use the same software systems. At bottom, plaintiffs claim that they and potential collective members were all subject to defendants' common policy or practice of failing to pay hybrid and/or remote employees for all time worked before they were able to clock-in, as well as failing to pay for rest time, work performed during meal times, and time spent waiting for technical issues to be fixed. That these employees may have used different software programs, worked on different products, or serviced different customers is not relevant to whether they are similarly situated with respect to these alleged FLSA wage and hour violations. Moreover, if "discovery reveals that some employees are not similarly situated, the class can be redefined or decertified" at the second step of this process. *Scholtisek*

---

[7] Defendants note that each plaintiff cites a different amount of unpaid time they spent on clock-in duties. For example, Hill states she started working approximately five minutes before clocking in while Phillips states she began working approximately thirty to sixty minutes before she was able to clock-in.

14

*v. Eldre Corp.*, 229 F.R.D. 381, 390 (W.D.N.Y. 2005). *See also Parks v. Dick's Sporting Goods, Inc.*, 05-CV-6590, 2007 U.S. Dist. LEXIS 20949, at *12 (W.D.N.Y. Mar. 21, 2007) (magistrate judge correctly declined to apply fact-specific inquiry into job duties or other potentially distinguishing circumstances at conditional certification stage; such considerations are to be addressed at the second stage of the certification analysis); *Francis v. A&E Stores, Inc.*, 06 Civ. 1638, 2008 U.S. Dist. LEXIS 49971, at *7 (S.D.N.Y. May 9, 2008) (variations among duties can be explored during discovery and addressed in second-stage motion for de-certification).

*Geographic Scope of the Potential Collective*

Defendants are headquartered in Buffalo, New York and are registered to do business in Ohio. (Dkt. No. 34, ¶¶ 8-9) It is apparent from the complaint, motion papers, and discussion during oral argument that defendants employ hybrid and/or remote employees in a number of different states. During oral argument, counsel for plaintiffs indicated that plaintiffs are seeking to conditionally certify a class of non-exempt hybrid and/or remote workers in all states where potential collective class members are located, with the exception of Pennsylvania.[8] Defendants argue that if certification is granted, the geographic scope of the potential collective should be limited to New York and Ohio, since those are the states where the named plaintiffs reside. (Dkt. No. 34, ¶¶ 1-3)

Plaintiffs' evidence of the similarly situated nature of the proposed collective does not provide any basis on which to impose geographical restrictions, with the exception of

---

[8] On January 31, 2025, Chief United States District Judge Mark R. Hornak conditionally certified a collective action pursuant to Section 216(b) of the FLSA for current and former hybrid/remote workers employed by defendants in Pennsylvania from February 20, 2021 to present who were not properly compensated for time spent logging in to the companies' systems prior to their shift. *See Fulton v. Capital Mgmt. Servs. L.P.*, 2:22-CV-823 (W.D. Pa. 2022)

Pennsylvania, where a collective has already been conditionally certified. Stated another way, there is nothing in the record to indicate that remote and/or hybrid employees of defendants, located in states other than Ohio and New York, were not subject to the same allegedly unlawful pay practices and policies as plaintiffs. Should discovery reveal that potential collective members in certain states are not similarly situated to plaintiffs, the collective may be decertified or modified at that time.

### Conditional Certification and Notice

The Court finds that plaintiffs have made the requisite showing of a factual nexus between the circumstances of their claims and the circumstances of the potential collective. Accordingly, the Court conditionally certifies this case as an FLSA collective action on behalf of plaintiffs and others similarly situated. Plaintiffs' request for defendants to provide the requested contact information for potential opt-in plaintiffs is granted. The information must be provided by defendants promptly and in a reasonably useable electronic form.

The Court directs that the parties meet and confer regarding the contents of the proposed notice and consent forms. The potential collective shall exclude individuals employed by defendants in Pennsylvania and the parties shall confer regarding the correct date for the scope of the potential collective. The parties shall also meet and confer as to whether the definition of the potential collective should further specify that it includes non-exempt hybrid and/or remote workers employed by defendants as customer service representatives or in other similar positions whose job duties included speaking on the phone with customers. The parties shall jointly submit a proposed notice and consent form to the Court for approval within thirty (30) days of the entry of this order. If

the parties are unable to agree upon the proposed notice and consent forms, they shall each submit to the Court a proposed version with a brief explanation of their respective positions, with case law if appropriate.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for conditional certification of an FLSA collective action and court-supervised notice to potential opt-in plaintiffs is granted. (Dkt. No. 41)

**SO ORDERED**.

Dated:  September 4, 2025
        Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge